IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:15-CV-01878-AWI-MJS |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT THE COURT GRANT PLAINTIFF'S *EX PARTE* MOTION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE** |
| v. | |
| APPROXIMATELY $460,520.00 IN U.S. CURRENCY, | |
| Defendant. | **(ECF No. 9)** |
| | **OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

This matter came before the Honorable Judge Michael J. Seng on Plaintiff United States' ex parte motion for default judgment and final judgment of forfeiture. (ECF No. 9.) There was no appearance by or on behalf of any other person or entity claiming an interest in the defendant funds to oppose plaintiff's motion. Plaintiff's motion has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 302(c)(19) and is considered in accordance with Local Rule 540(d).

This matter was taken under submission without oral argument pursuant to Local Rule 230(g) and the hearing set for this matter was vacated. (ECF No. 11.)  For the reasons set forth below, the Court will recommend that Plaintiff's motion be GRANTED.

1

I. **RELEVANT FACTUAL BACKGROUND**

This action arose out of a Verified Complaint for Forfeiture *In Rem* filed December 15, 2015. (ECF No. 1). The complaint alleges that the Defendant funds are believed to be proceeds from controlled substance transactions.

On September 24, 2015, detectives from the Fresno County Sheriff's Department were traveling southbound on Interstate 5 when they observed a white Lincoln Navigator traveling too closely behind a tractor trailer. The Navigator was traveling at a rate of 60 miles per hour in moderate traffic, which presented a potential traffic hazard if the tractor trailer were to brake too suddenly. The detectives observed no traffic in the adjacent lane that would have prevented the Navigator from passing the tractor trailer. After observing the Navigator travel too closely behind the tractor trailer for nearly a half mile, the detectives initiated a traffic stop. (ECF No. 1, p. 2, ll. 14-26.)

Upon approaching the Navigator, the detectives observed two individuals seated inside, Juan Plazola in the driver's seat and Eduardo Maya-Perez in the front passenger seat. Mr. Plazola was advised of the traffic stop in Spanish. His right hand was trembling as he gathered his license, registration, and proof of insurance for the detective. (ECF No. 1, p. 3, ll. 3-4.). The detective observed a key ring with a single key in the ignition of the Navigator and detected a strong odor of air freshener coming from the vehicle. (ECF No. 1, p. 3, ll. 5-6.) Based on the detective's training and experience, he concluded that Mr. Plazola's nervous behavior, the odor of air freshener, and the presence of only one key on the key ring were signs that he was engaged in criminal activity. (ECF No. 1, p. 3, ll. 25-27.) Drug traffickers commonly do not have any of their own keys on the key ring for the vehicle they are driving since the vehicles are used solely for trafficking drugs and the driver will not leave his personal keys on the same key ring. Furthermore, drug traffickers will use air fresheners to mask the scent of drugs from narcotic canines. (ECF No. 1, pp. 3-4, ll. 28, 1-8.) Upon being questioned, Mr. Plazola informed the detectives that the Navigator belonged to his friend Marcia and that he had borrowed the vehicle to drive to Los Angeles from Hayward to pick up his own car in Los Angeles, which was broken down. (ECF No. 1, p. 3, ll. 12-14.) Mr. Plazola said that he planned to spend the night in Los

Angeles and then return home to Hayward the next day. (ECF No. 1, p. 3, ll. 14-16.) He told the detectives that there were no drugs, weapons, or large sums of money in the vehicle, and gave the detectives consent to search the Navigator. (ECF No. 1, p. 3, ll. 17-19.) Mr. Maya-Perez, who was questioned separately from Mr. Plazola, also stated that the pair were on their way to Los Angeles to pick up Mr. Plazola's vehicle, and said there was no contraband inside the Navigator. (ECF No. 1, p. 3, ll. 20-24.) Mr. Maya-Perez also gave consent to search the vehicle. (ECF No. 1, p. 3, ll. 23-24.)

An initial search of the Navigator turned up three car fresheners hanging from the steering column. (ECF No. 1, p. 4, ll. 5-6.) The detectives did not find any clothes or overnight bags. (ECF No. 1, p. 4, ll. 6-7.) A Narcotic Detection Canine named Kash then proceeded to sniff the exterior of the Navigator and gave a positive alert for narcotics near the rear cargo area of the vehicle. (ECF No. 1, p. 5, ll. 3-4.) A detective conducted a hand search of the vehicle and uncovered a black "Beats" pouch that contained four bundles of $100 bills in U.S. currency. (ECF No. 1, p. 5, ll. 9-15.) Based on the foregoing, Mr. Plazola, Mr. Maya-Perez, and the Navigator were transported to a different area so that detectives could safely conduct a more extensive search of the vehicle. (ECF No. 1, p. 5, ll. 20-23.)

After relocating to a safer location, the detectives spoke with the owner of the Navigator over the phone, a woman named Marcia. She informed the detectives that she had loaned her vehicle to her friend Mr. Plazola and did not know of any weapons, drugs, or money in the car. (ECF No. 1, pp. 5-6, ll. 24-28, 1-5.)

The detectives then searched the rear cargo area, pulling apart the upholstery of the back of the seats and uncovering a piece of particle board that detectives observed was secured by screws that did not appear to be manufacturer screws. (ECF No. 1, p. 6, ll. 12-13.) The detectives pried up the particle board and found several green cellophane packages. After pulling off the particle board covers on the backs of the second and third rows of seats, the detectives uncovered twenty bundles of U.S. currency within the empty spaces inside seats. (ECF No. 1, p. 6, ll. 6-20.)

Both Mr. Plazola and Mr. Maya-Perez claimed they had no knowledge of the money

hidden within the seats.  The detectives advised Mr. Plazola and Mr. Maya-Perez that due to the circumstances under which the funds were found, the funds would be seized.  A receipt for the currency was issued to Mr. Plazola, who stated that he understood, and signed the receipt.  Both Mr. Plazola and Mr. Maya-Perez were provided with a Disclaimer of Currency form, written in Spanish, which both read and signed.  Mr. Plazola, Mr. Maya-Perez, and the Navigator were released without further incident.  (ECF No. 1, p. 6, ll. 21-28.)

As the currency was hidden within the seats of the Navigator, packaged within vacuum-sealed bags, wrapped in carbon paper and cellophane, and drenched in a scented liquid substance, the detectives believed that the currency was the proceeds of controlled substance transactions.  (ECF No. 1, p. 7, ll. 1-12.)  As such, it is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## II.     PROCEDURAL HISTORY

Based on the allegations in the complaint, the Court issued a Warrant for Arrest of Articles *In Rem* on December 30, 2015.  (ECF No. 3.)  The Warrant for the Arrest was executed on the Defendant funds on January 4, 2016.  (ECF No. 4.)  Public notice of the action and the arrest of the Defendant funds was published via the official government forfeiture site, www.forfeiture.gov, on December 31, 2015, for 30 consecutive days.  This publication is consistent with Local Rule 500(d) via Supplemental Rule G(4)(a), and proof of such publication was filed with the Court on February 2, 2016.  (ECF No. 5.)

In addition to providing notice by publication, on December 30, 2015, copies of the Complaint, Warrant for Arrest of Articles in Rem, Order Setting Mandatory Scheduling Conference, Notice of Availability of Voluntary Dispute Resolution, Notice of Availability of a Magistrate Judge, and Notice of Forfeiture letter dates December, 2015, were served on Mr. Plazola at his last known address of 25800 Industrial Blvd., Apt. 1210, Hayward, California, 94545, by first class mail and certified mail no. 7012-3460-0001-6702-0944.  The first class parcel was returned to the United States Attorney's Office on February 25, 2016, marked as "Return to Sender" and "Unable to Forward."  The United States Postal Service left notice of the certified mail parcel on February 25 and 29, 2016, for the recipient Juan Plazola before the

parcel was returned to the United States Attorney's Office marked as "Return to Sender" and "Unable to Forward." (ECF No. 9.)

On December 30, 2015, Mr. Plazola was served with copies of the above-listed documents at an additional known address of 25455 Whitman Street, Apt. 25, Hayward, California, 94544-2454, by first class mail and certified mail no. 7012-3460-0001-0937. The Domestic Return Receipt (PS Form 3811) was signed by Gladys Espindola and received in the U.S. Attorney's Office on January 4, 2016. (ECF No. 9.)

On December 30, 2015, Mr. Maya-Perez was served with copies of the above-listed documents at his last known place of residence, 27132 Garden Road, Hayward, California, 94544, by first class mail and certified mail no. 7012-3460-0001-6702-0920. The first class parcel was returned to the United States Attorney's Office on February 22, 2016 marked as "Return to Sender" and "Unable to Forward." The certified mail parcel was returned to and received by the United States Attorney's Office on February 22, 2016, marked as "Return to Sender" and "Unable to Forward." (ECF No. 9.)

To date, there have been no claims filed by or on behalf of Juan Plazola or Eduardo Maya-Perez to the Defendant funds and the time for any person or entity to file a claim and answer has expired. Fed. R. Civ. P. Supp. R. G(4)(b)(i).

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), a party can apply to the district court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). Whether or not to grant default judgment lies within the discretion of the district court. Lau Ah Yew v. Dulles, 236 F.2d 415, 416 (9th Cir. 1956). On a motion for default judgment, the factual allegations of the complaint relating to liability are taken as true. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987) (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"); and the court's Local Rules for Admiralty and *in rem* actions. United

States v. Approximately 335 Counterfeit NFL Jerseys, No. 1:13-cv-341-AWI-GSA, 2014 WL 2575446, at *5 (E.D. Cal. June 9, 2014) (referencing United States v. $191,910.00, 16 F.3d 1051, 1069 (9th Cir. 1994) (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules) (*superseded by statute on other grounds*)).

The Supplemental Rules do not provide a procedure to seek default judgment in an action *in rem*, however Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules." When considering whether to enter default judgment under Federal Rule of Civil Procedure 55, Courts may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III. DISCUSSION

#### A. Sufficiency of the Verified Complaint

Pursuant to the Supplemental Rules, the government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the government will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. R. G(2).  With regard to the sufficiency of the factual detail of the verified complaint, the government is not required to show a relationship between the proceeds of a drug crime and a specific drug transaction.  Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime. United States v. $11,500.00 in United States Currency, *In Rem*, et al., 710 F.3d 1006, 1013 (9th Cir. 2013) (The government may meet its burden to show that property is subject to forfeiture with sufficiently strong circumstantial evidence linking the currency to drug trafficking generally); United States v. Currency, U.S.

$42,500.00, 283 F.3d 977, 984 (9th Cir. 2002) (affirming government's motion for summary judgment in light of substantial circumstantial evidence that currency was connected to drug trafficking, and where claimant refused to disclose the source of the currency or provide any other evidence that the source was legitimate).

The verified complaint states the grounds for *in rem* subject matter jurisdiction and venue, describes the currency seized and the circumstances surrounding the seizure, and identifies the relevant statutes. The government contends that the verified complaint establishes circumstantial evidence that the Defendant fund were furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Here, taking the facts alleged in the Verified Complaint as true, there is more than sufficient circumstantial evidence linking the Defendant funds to drug trafficking in general. The money was found hidden inside of the seats. The money was tightly wrapped in plastic and carbon paper and drenched in scented liquid. A Narcotics Detection Canine made a positive alert as to the presence of narcotics in the vehicle. These facts provide a sufficient enough connection between the Defendant funds and illegal drug activity to support forfeiture.

### B.  Notice Requirement

Subject to certain exceptions not present here, the Supplemental Rules also require that the government publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and identify the name of the government attorney to be served with the claim and answer. Fed. R. Civ. P. Supp. R. G(4)(a)(ii)(A)-(C). If the property is in the United States, notice must be published in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located. Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(A). In lieu of newspaper publication, the government may publish notice by posting on an official internet government forfeiture site for at least thirty consecutive days. Fed. R. Civ. P. Supp. R.G(4)(a)(iv)(C). Claims must be made within 30 days

after the completion of the publication. Fed. R. Civ. P. Supp. R.G(5).

Here, publication occurred on the official internet government forfeiture site www.forfeiture.gov on December 31, 2015, for 30 consecutive days. A Declaration of Publication was filed with the Court on February 2, 2016. (ECF No. 5.) Accordingly, the requirements for notice by publication pursuant to Local Rule 500(d) and Supplemental Rule G have been satisfied.

When the government knows the identity of the property owner or owners, the Due Process Clause of the Fifth Amendment requires "the Government to make a greater effort to give him notice than otherwise would be mandated." United States v. Real Property, 135 F.3d 1312, 1315 (9th Cir. 1998). In such cases, the government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. Dusenbery v. United States, 534 U.S. 161, 168 (2002). "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice." Mesa Valderrama v. United States, 417 F.3d 1189, 1197 (11th Cir. 2005); Real Property, 135 F.3d at 1316.

Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be sent by means reasonably calculated to reach the potential claimant. Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must contain the following information: the date when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than 21 days after the filing of the claim; and the name of the government attorney to be served with the claim and the answer. Id. Here, the government provided notice of the forfeiture action by mailing copies of the required documentation, via both certified and first class mail, to Mr. Plazola and Mr. Maya-Perez at their last known addresses. Mr. Plazola was sent notice at an alternate address as well. Therefore, a reasonable attempt at serving notice on the potential claimants was made.

**C.   Failure to Timely Answer Claim**

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right in

a forfeiture action must file a claim with the Court within the time specified by the direct notice. Fed. R. Civ. P. Supp. G(4)(b)(ii)(B), (5)(a)(ii)(A). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. Real Property, 135 F.3d at 1317. Publication ended on January 29, 2016; any potential claimants had until 30 days after that date to respond, but did not. While direct notice was not provided to the known potential claimants, it was not for lack of effort by the government. Accordingly, the time to file a claim has expired, and pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court properly entered defaults against Mr. Plazola and Mr. Maya-Perez.

### D. Default Judgment Appropriate Under Rule 55

The discretionary Eitel factors outlined above favor granting the government's motion for default judgment. First, the government would be prejudiced by the denial of its motion. It would have to spend additional time and effort litigating an action in which the claimants have made no claims. Second, the government's claims appear to have merit, as discussed above. Third, the government has adhered to the procedural requirements of a forfeiture action *in rem.* Fourth, the currency that was seized and subject to forfeiture is not of such substantial value as to warrant denial of the government's motion, particularly in light of the fact that no claimant has come forward to challenge the forfeiture. Fifth, there are no genuine disputed issues of material fact. Sixth, there is no evidence that the failure of any other claimants to answer is due to excusable neglect. Finally, although merits-based decisions are always preferred, it is not practical, where, as here, claimants have made no claims. Accordingly, there is no impediment to default judgment sought by the government and the Court will recommend that the motion be granted.

### V. CONCLUSION

Plaintiff has shown that a complaint for forfeiture was filed; that potential claimants Plazola and Maya-Perez received notice of the forfeiture action; that any and all other unknown potential claimants have been served by publication; and that grounds exist for entry of a final judgment of forfeiture.

Therefore, IT IS RECOMMENDED as follows:

1. That Juan Plazola and Eduardo Maya-Perez be held in default;

2. That Plaintiff's motion for default judgment and final judgment of forfeiture be granted;

3. That a judgment by default be entered against any right, title, or interest of potential claimants Juan Plazola and Eduardo Maya-Perez, and all other unknown potential claimants, in the Defendant funds;

4. That a final judgment be entered, forfeiting all right, title, and interest in the Defendant funds to the United States of America, to be disposed of according to law; and

5. That the Default Judgment and Final Judgment of Forfeiture lodged herein be signed by the Honorable Anthony W. Ishii and filed by the Clerk of the Court.

These findings and recommendations are submitted to District Court Judge Anthony W. Ishii pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. Within fourteen (14) days after being served with these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The District Judge will review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specific time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   April 22, 2016                    /s/ *Michael J. Seng*
                                           UNITED STATES MAGISTRATE JUDGE